56 CCPA

**Application of Michael A. BRETSCH.**

**Patent Appeal No. 8115.**

United States Court of Customs and Patent Appeals.

April 17, 1969.

Owen & Owen, Toledo, Ohio, attorneys of record, for appellant. John C. Purdue, Toledo, Ohio, Vincent L. Barker, Jr., Toledo, Ohio, of counsel.

Joseph Schimmel, Washington, D. C., for the Commissioner of Patents. Joseph Nakamura, Washington, D. C., of counsel.

Before WORLEY, Chief Judge, and RICH, ALMOND and BALDWIN, Judges.

WORLEY, Chief Judge.

The issue here is whether the Board of Appeals committed reversible error in affirming the examiner's rejection of claims 9–11 [1] under 35 U.S.C. § 103 as obvious in view of Rabezzana [2] considered with Rohde.[3]

The invention relates to a spark plug adapted for use at high indicated mean effective pressures [4] and over wide temperature ranges without gas leakage, and to a method of making the plug. Claim 11, to which we have added numerals corresponding to elements in the application drawings reproduced below, is representative:

11. A spark plug for an internal combustion engine, comprising, in

---

1. Appearing in application serial No. 359,203, filed April 13, 1964 and entitled "Spark Plug and Method." In his brief, appellant has withdrawn the appeal as to claims 1–8.

2. U. S. Patent 1,609,735 issued December 7, 1926.

3. U. S. Patent 2,020,967 issued November 12, 1935.

4. The specification states:

Spark plugs are conventionally rated according to the indicated mean effec-

tive pressure (IMEP) in a cylinder of an internal combustion engine at which the plug starts to cause preignition. This is determined by installing a spark plug in an internal combustion engine using the spark plug to ignite the gases in the combustion chamber of the engine. The pressure of the gases in the combustion chamber is gradually increased until preignition occurs. The indicated mean effective pressure is noted at which preignition first occurs and this is the IMEP rating of the spark plug.

combination, a hollow tubular shell [10] having a reduced opening [16] in the lower portion thereof forming an upwardly facing shoulder [17] and a constricted portion of reduced shell diameter axially above said shoulder, an insulator [18] positioned axially in said shell and having a complementarily shaped shoulder [26] seated upon said shell shoulder and having a flange portion [28] axially above said shoulder, said flange having a sliding fit within said shell above said shell shoulder and a reduced diameter section [29] extending upwardly from said flange forming an annular pocket [30] with said shell, *a body of a resilient material* [31] *enclosed within said pocket extending axially from said insulator flange to the upper end of* *said shell*, and means [32] on said upper edge for closing the upper end of said pocket and holding said body within said pocket, *said shell having a sidewall portion of reduced cross section* [33] *intermediate said reduced opening and said upper edge, said sidewall portion of reduced cross section being cold worked in compression, and said body of resilient material being compressed in situ within said pocket as an incident of the cold working of said sidewall portion* of reduced cross section to a degree which enables said body to expand longitudinally of said pocket by at least approximately 0.002 inch per inch of shell between said reduced opening and said upper edge. [Emphasis supplied.]

FIG-1-  FIG-2-  FIG-3-  FIG-4-

The emphasized portions of the claim denote the particular features which help bias the insulator shoulder 26 against tube shoulder 17 or metal gasket 27 to maintain an effective gas seal against the pressures in a combustion chamber of an operating gasoline engine. Resilient sealing means 31, preferably a particulate material such as talc or asbestos alone or mixed "with various materials," is confined in the annular pocket 30 between the insulator and upper portion of the metal tubular shell, and is capable of expanding to accommodate stresses resulting from installation of the plug and to offset the effect of thermal expansion of the metal shell between ambient and operating conditions.[5] Appellant ac-

---

5. Appellant's brief explains:
    This compression of the sealing material 31 is most important because
    spark plugs, in normal operation, are subject to a wide range of operating temperatures. For example, a spark

knowledges in the specification that "it has been the practice heretofore to tamp the particulate sealing material 31 in place and thereafter to deform the lip 32 [upper end of the shell] down upon the compacted sealing material," operations shown in Figures 2 and 3, respectively. Additionally, appellant provides the metal shell with a circumferential recess 33 which, after lip 32 has been turned down, is placed under sufficient axial load to cause "collapse of the metal adjacent the recess" and, concomitantly, further elastic compression of the particulate sealing material by lip 32, as shown in Figure 4 and described in equivalent language in process claim 9. Though not claimed here, the specification states that "shell 10 might be heated before it is collapsed so that an additional load is placed upon the resilient sealing material 31 as the shell 10 cools to room temperature."

Rohde discloses a spark plug in which the ceramic insulator 10, seated on a gasket 12 interposed between a shoulder 11 of the insulator and a shoulder of the "usual" metal shell 14, is secured in the metal shell by a compacted body 17 of powdered soapstone (a variety of talc). The powder fills an annular space between the insulator and shell from the top of shoulder 11 to an optional moisture-sealing ring 16 beneath the inturned flange 15 at the top of the shell. To make his plug, Rohde pours the powder into the annular space, compacts it, fits the ring 16, and turns over the upper edge of the shell[6] to form the flange. According to Rohde, the powder:

> may be compressed in a body which forms a gas-tight joint and frictionally engages the adjacent walls sufficiently to hold the assembled parts in place, *and the compacted body has sufficient resiliency to maintain a tight joint between the parts throughout the repeated temperature changes to which the plug is subjected in use,*

plug in an automobile during winter operation will encounter operating temperatures from below freezing to several hundred degrees Fahrenheit, depending upon the characteristics of the engine in which it is installed. This wide temperature range presents a problem due to the different thermal coefficients of expansion of the metal shell material and the ceramic insulator. Because the metal (steel) shell has a much higher coefficient of expansion than does the ceramic (alumina) insulator, elevated temperatures will effectively increase the axial length of the shell relative to that of the insulator. Thus, unless there is provided a means to accommodate such expansion, the seal between the insulator and shell (at the shoulders 17 and 26) will fail and high temperature gases at high pressure will escape from the combustion chamber. * * *

6. Appellant's statement in his brief that Rohde's shell "does not have a section of reduced diameter" appears contradicted by Figure 1 of Rohde, clearly showing a section of reduced diameter located between numerals 19 and 11. That factor may have prompted the board's observation that claim 9 is:

> so broadly drawn as to be unpatentable over the device of Rohde unmodified since (1) this reference asserts that a gas type [tight?] joint is obtained which implies that the compressible body may expand to the limits recited in the claims, and (2) *forming the flange 15 not only crimps the shell but also deforms it lengthwise.* [Emphasis supplied.]

Here appellant merely states that "the shell [of Rohde] is not longitudinally compressed when the flange 15 is crimped over." Certainly Rohde does not expressly disclose the longitudinal deformation found by the board. Without knowing what Rohde meant by his reference to "the usual shell 14," or whether he specifically contemplated one of the Rabezzana type, it is impossible for us to determine from the schematic drawings of Rohde and the limited comments of both appellant and the board just what does happen inherently when flange 15 is crimped over.

and without imposing undue stresses upon the parts because of different coefficients of heat expansion. [Emphasis supplied.]

FIG. 1.

ROHDE

*Fig.3*

RABEZZANA

Rabezzana '735 discloses a method of assembling a spark plug to insure a gastight seal between the insulator 10 and metal shell 6. "Suitable gaskets" are interposed between the flange 11 and shell ledge 15 and the upper and lower shoulders 14 and 13 of the insulator. The shell has a thin annular section 17 formed by groove 16 in its outer surface. In assembling the plug, the flange 11 at the upper end of the shell is turned inwardly, as shown in Figure 3, and thereafter the thin annular section is heated and caused to yield under axial pressure to compress the gaskets. Upon cooling, "the heated wall at the bottom of the groove contracts and further compresses the gaskets thus providing a plug in which the final pressure is due to the contraction of a heated portion of the metallic shell." Claim 5 of Rabezzana '735 defines the method more broadly:

5. The method of making a spark plug which consists in providing a hol-low metallic shell or casing having an internal supporting ledge, a rib at its upper end, and an external circumferentially extending groove between said rib and said ledge; placing an insulating member within said casing and turning said rib inward and into permanent holding engagement therewith; and thereafter applying pressure to the portions of said casing separated by said groove to thereby compress the comparatively thin wall section at the bottom of said groove to a degree sufficient to produce yielding of said thin wall section.

Said the examiner:

\* \* \* To utilize inorganic powder as the sealing means in Rabezzana in lieu of or in addition to the gasket sealing means at 14 therein would be obvious in view of Rohde. Conversely, to construct and compress the shell of Rohde as taught by Rabezzana in order to assure that the resilient pow-

der of Rohde remains tightly compacted would be obvious. * * *

The board agreed, and so do we.

Here appellant urges that none of the references suggests that a *cold worked* spark plug shell, e. g., one compressed axially without application of heat, would be satisfactory. Notwithstanding claim 5 of Rabezzana '735, which the board noted "is a closed method claim using the word 'consists' [and] specifically omits hot working of the metal," appellant states that it is apparent from the tenor of the entire specification of that reference that the heating step is essential to produce an operable spark plug.

We do not see what any agreement by us with appellant's interpretation of Rabezzana '735 would avail him. The board further cited and relied on two other Rabezzana patents,[7] earlier made of rec-

ord by the examiner, which it concluded were sufficient to show that hot or cold working of the metal shell of the spark plug is "only a matter of * * *

7. U. S. Patent 1,862,981, issued June 14, 1932. U. S. Patent 1,872,496, issued August 16, 1932.

The '981 patent discloses an improvement in the sealing effect obtained either from "thermo-plastic collapse" of a reduced section zone in the shell of the spark plug disclosed in the earlier Rabezzana '735 patent or, as noted by the board, from "any inward collapse of a suitably reduced and positioned zone."

The improvement is obtained by placing a gas-impervious, deformable gasket (23, 25 or 23a, 25a) of asbestos and metal in an annular space between the shell (16) and insulator (10). Like appellant, Rabezzana '981 recognizes that "subsequent contraction of the mentioned metallic parts upon cooling may be relied [on] to increase the tightness and durability of the mentioned joints" if the reduced zone 20 is heated.

The '496 patent also discloses a weakened shell portion which is subjected to a "thermo-plastic or other inward collapse" to effect both a radial and axial compression of the contents of the shell.

choice." We do not understand appellant to seriously dispute the factual question of what the latter two Rabezzana patents disclose. What appellant does contend is that "a satisfactory spark plug was not produced using the Rabezzana construction when the shell was cold compressed rather than hot compressed." As evidence of that, he relies on an affidavit of one Podiak, who concluded:

> 6. He does not know and does not believe, and therefore denies, that it is possible to produce a useful spark plug by the method suggested by said Rabezzana references unless a final longitudinal compression of a metal shell is carried out when a thinned wall section of that shell is at a temperature well in excess of 1000°F.

The solicitor points out that, although the affidavit is ostensibly directed to establishing the inoperativeness of all Rabezzana patents when cold rather than hot pressing is utilized, the affiant fails to identify the type or material of the gaskets employed or to establish he considered the metal and asbestos annular gasket of Rabezzana '981.

Quite apart from those contentions, and whatever the necessity for heating the shells of Rabezzana when a nonresilient gasket or packing material is utilized to form a gas-tight seal, it seems to us that one of ordinary skill in this art, presumably conversant with the disclosures of Rohde and Rabezzana heretofore set forth, would recognize that were a resilient powder to be relied on to maintain a gas-tight seal, as suggested by Rohde, an additional contraction of a Rabezzana-type shell caused by cooling of the hot-worked metal shell, though advantageous, would not be a necessity. As appellant states in his brief:

> It is because of the appellant's construction utilizing the resilient mass of material with cold working that the requirement for hot pressing is eliminated. * * *

So much, we think, is suggested by the prior art.

Similarly, we do not think the improved results set forth in the Hoffman affidavit are persuasive of patentability since they appear to be but the expected ones. It seems self-evident that additional compression of the resilient tamped powder seal of Rohde, such as from an axial and/or radial collapse of an appropriate surrounding shell as suggested by Rabezzana, would provide a tighter seal initially which would resist higher pressures in the combustion chamber, as noted by the examiner, and would further provide better heat transfer between insulator and shell as well as allow more thermal expansion of the sealing material to occur to accommodate thermal expansion of the shell over a contemplated range of operating temperatures.

Our review of the record convinces us that the board did not err in sustaining the rejection. The decision is affirmed.

Affirmed.

RICH, Judge, concurs in the result.